# FARMERS & MERCHANTS STATE BANK v. NATIONAL SURETY COMPANY.[1]

May 15, 1925.

No. 24,583.

**Complaint and answer did not raise issue.**
1. The complaint did not show the action to be premature, and the answer did not raise that issue, but denied all liability upon the indemnity bond given to secure plaintiff from loss through the fraud or dishonesty of its cashier.

**Judgment notwithstanding verdict.**
2. Defendant is not entitled to judgment non obstante, for, as to one item included in the verdict, there is no assignment of insufficiency of the evidence to support a recovery.

**Questions of loss for the jury.**
3. The evidence examined as to all the items upon which a loss is claimed, and all *held* to be for the jury.

**Verdict sustained, after approval by trial court.**
4. The verdict approved by the trial court, viewed in the light of the record, cannot be held so excessive that the inference must be that passion or prejudice swayed the jury.

**No errors.**
5. Minor complaints regarding the trial are not well taken.

1. See Pleading, 31 Cyc. p. 170.
2. See Judgments, 33 C. J. p. 1184, § 114.
3. See Fidelity Insurance, 25 C. J. p. 1115, § 30.
4. See Fidelity Insurance, 25 C. J. p. 1116, § 32 (1926 Anno).
5. See Appeal and Error, 3 C. J. p. 1337, § 1470; 4 C. J. p. 994, § 2975; Evidence, 22 C. J. p. 966, § 1201½ (1926 Anno).

Action in the district court for Otter Tail county upon an fidelity bond. The case was tried before Parsons, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an

[1] Reported in 203 N. W. 969.

order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Donohue & Quigley,* for appellant.

*Jesse A. Schunk* and *M. J. Daly,* for respondent.

HOLT, J.

Plaintiff, a bank, recovered a verdict of $4,838.98 upon a bond given by defendant indemnifying against loss "through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction of Andreas Emil Anderson," plaintiff's cashier. Defendant appeals from the order denying judgment notwithstanding the verdict or for a new trial.

Error is assigned because the court below overruled the objection to the introduction of evidence on the ground that the complaint did not state a cause of action, and also because of the refusal to dismiss the action as premature. Both points hinge on a clause in the bond to the effect that "legal proceedings for recovery hereunder may not be brought until three months have elapsed" after filing proof of loss with defendant. It is sufficient to say that the complaint on its face did not disclose that the action was brought within the three months; and, if brought prematurely, defendant, with full knowledge thereof, asserted no defense on that ground in its answer, but simply contented itself with alleging that plaintiff "has not performed all the conditions of said bond on its part to be performed" and then denied Anderson's defalcation and its own liability or indebtedness to plaintiff. We think this fails to raise the technical objection that the action was prematurely brought, or that it was necessary to allege in the complaint that defendant had waived the three months' time by its denial of all liability. Defendant cites Gallenbeck v. Northwestern Mut. R. Assn. 84 Minn. 184, 87 N. W. 614; but that was on a demurrer to a complaint which disclosed that the insurance was not by its terms payable when the action was begun.

The bonded employe, Anderson, was cashier of plaintiff from some time in 1919 to November 7, 1923, when discharged. Plaintiff was a

small bank, capitalized at $25,000, in New York Mills, a town of some 700 people. The board of directors with one or two exceptions were farmers. The exceptions were a doctor who part of the time was a director, and an elderly man who used to conduct a hardware store in New York Mills for many years, but had retired and removed from that place. Though president he did not attend meetings regularly. The evidence tends to show that Anderson dominated the board of directors; that none understood banking or bookkeeping sufficiently to discover the truth when Anderson desired to cover up some of his transactions, at times treating them as the bank's and at other times as his personal matter. The jury were entitled to view the items involved from that standpoint.

Defendant's claim for judgment was rightly denied, for as to one item, namely, the withholding from the bank of commissions received on the insurance business transacted in Anderson's name, there is no assignment challenging the verdict insofar as it may include this item. And an examination of the record clearly discloses that whether the bank had sustained a loss because of appropriation by Anderson of earnings from the insurance business was for the jury. The same may be said as to the item of the overdraft in Anderson's, so called, Blomberg trustee account, more particularly to be noted hereafter, which he charged to the bank's expense account. If the jury found the Halgrum transaction, hereafter referred to, Anderson's and not the bank's, it follows that charging the overdraft in the Blomberg trust account to the expense account of the bank was a wrongful appropriation of the bank's funds. The directors denied that there was any authority given Anderson to so do.

The three other items wherein plaintiff claimed a loss through the fraud or dishonesty of Anderson are the Halgrum note and mortgage of $1,000 and the money expended in that deal, viz. $1,726.10, the Blomberg payment of $422, and the Andrews-Anderson transaction of $2,000. Connected with the two first transactions is the manipulation of Anderson's checking account and the Blomberg trust account.

William and Leonard Halgrum had had dealings with plaintiff prior to Anderson's becoming cashier. Halgrum owned a farm of

260 acres on which was a first mortgage of $10,000, a second of $750, a third mortgage of $1,000 held by Farmers State Bank of Deer Creek, a fourth and a fifth mortgage totalling $5,000, and a sixth mortgage of $1,500 held by plaintiff. Anderson was a witness and testified that for plaintiff's use he took an assignment of this $1,000 mortgage from Farmers State Bank of Deer Creek in his own name, in March, 1921, to protect plaintiff's sixth mortgage; that, in order to do that and avoid foreclosures of the first and second mortgages, he had to pay an interest coupon on the first of $550 and an instalment of $75 on the second; that he gave his personal check for $1,101.10 for the first item and $625 for the other; that this overdrew his personal account nearly $1,700; that later in April he removed the overdraft by charging $1,000 to the bank and $800 to the Blomberg trustee account, and that this was done with the approval of the directors. This is denied by the directors who testified. One director is dead and another was so ill as not to be able to testify. The assignment to Anderson was never recorded. Toward the latter part of Anderson's service, the making or renewal of important loans was passed on at directors' meetings as appears from the minutes kept. And at the meetings in January of 1920 and 1922 resolutions were passed that the cashier could not make a loan in excess of $500 without being authorized by the discount committee or the entire board.

There is no record authorizing this $1,000 transaction nor any of the ones which plaintiff claims herein as having been sanctioned. The directors testifying denied that there was ever any consideration or authority given to such a proposition as Anderson carried out, and that they never knew thereof. The examiner's reports, signed by some of the directors, are pointed to as disclosing that this transaction was known to them. But we find in the report for April 12, 1921, a Halgrum note of $1,500 referred to, and the evidence shows several by the same makers in smaller amounts. In the report of July 11, 1922, there appears "Wm. Halgrum, $1,000," and "do, $1,445," under the heading "Loans Secured by second mortgages." In a report of February 2, 1923, the cashier and one of the directors, after certifying that assets in way of loans and discounts were car-

ried on the books at actual values, excerpts therefrom, among others, "William Halgrum, $635.65," and "do, $1,434." The same appears in report of September 17, 1923. It is readily seen that directors knowing the sixth Halgrum mortgage of $1,500 and the other smaller loans to the Halgrums might be easily misled. What favors Anderson's version is the difficulty in finding any motive for his making the deal a personal matter. On the other hand, the book entries and the documentary evidence indicate an unauthorized act on the part of Anderson done in his own name, but out of which there was a loss of the bank's funds. And we think the jury are justified in so determining.

The records show an account in Anderson as trustee for Sophia Blomberg. On April 14, 1921, there was to the credit of that account $1,951.70, but $800 thereof was then transferred to his personal account to remove the overdraft caused by the Halgrum transaction. The strange thing also appears that while Anderson says Mrs. Blomberg intrusted the money in this account to him with the privilege to use as he saw fit, the note of herself and husband for $742 given March 15, 1921, drawing 8 per cent interest, and secured by real estate mortgage was held by the bank. Upon this note there is claimed to have been a payment of $442, on April 15, 1921, and interest of $4, and the same are entered on the note by Anderson. Anderson claims this was done on November 7, 1923, when he was discharged, without receipt of any money and simply to show how he stood with Mrs. Blomberg. There also appears among the bank's papers a note of the Blombergs, for $941 dated December 30, 1922, which Anderson says is a renewal of the one of $742 and small note of $80 with some interest. It is hard to understand how, with a trustee account in their favor, these old people should give these notes drawing 8 per cent without requesting Anderson to pay them out of that account, and, stranger still, that, when the Blombergs were notified of the existence of such notes in the summer of 1923, Charles Blomberg, a son, went to Anderson at the bank who then admitted that only $300 was due from them. There is no record showing that the $446, so credited on the note, went to the bank nor, if there is only $300 due the bank from Blombergs, is there any

plausible explanation for the existence of this renewal note indicating over $900 due from them. There was testimony that the indorsement of the $446 payments was on the note in the summer of 1923. Surely there is enough concerning this item to go to the jury to determine whether $446 was paid on the note which was not received by plaintiff through the dishonest acts of Anderson.

Another item submitted to the jury was the Andrews-Anderson transaction. Plaintiff held notes against one Andrews for $2,090, secured by a third mortgage on 80 acres of land and a chattel mortgage. There was a first mortgage of $6,000 and a second mortgage of $1,000 on the 80. Anderson made a deal with Andrews by which the latter satisfied the second mortgage and plaintiff released its real estate and chattel mortgage debt of $2,090 in consideration of Andrews conveying the farm to Hulda Anderson, wife of the cashier. Anderson claims that the title was placed in his wife for plaintiff's benefit and by direction of its directors, and that when so placed he and his wife gave a note and mortgage to the bank for $2,000. In this transaction Anderson wrote his name Emil Anderson instead of the usual Andreas Emil or A. E. Anderson and attempted to conceal his identity in the deal from the bank examiner. He now claims the land always belonged to the bank, but never was entered as such on the bank's books. However, the note and mortgage his wife gave were listed as assets of the bank. It was plaintiff's claim that it never authorized this deal, and that its directors were wholly ignorant thereof. However, in September, 1923, two of the directors knew that the mortgage was that of his wife, for they went down and told the examiner that Anderson had not been frank with him. The jury could well find that the transaction with Andrews was not that of the bank but Anderson's personal affair. The two directors, who were such at the time it took place, deny that it was either known to or authorized by them. That the jury were justified in finding the deal fraudulent as to the plaintiff is clear, if the directors' testimony was believed, corroborated, as it is, by the documentary evidence. There may be some uncertainty as to the amount of the loss sustained by the bank in this matter. The

property covered by the chattel mortgage was lost to it. Anderson admitted that this was worth nearly $1,000. Plaintiff obtained the Anderson note and mortgage of $2,000 in lieu of the Andrews' $2,090 note and mortgages, and in addition the satisfaction of the $1,000 mortgage on the land ahead of the Anderson mortgage. But both Anderson and his wife are wholly insolvent. How much of this item is in the verdict may not be ascertained to a nicety now. The court could not withdraw the whole of this item from the jury. And we are not prepared to say on this record that a recovery of all plaintiff claimed thereon was not justified.

The instructions of the learned trial court were terse and clear, and as favorable to defendant upon the construction of its obligations under the terms of the bond as it had any right to ask. The court also instructed as to Anderson's doings that "if the directors either by word or act consented to the transaction as it was carried out there could be no recovery on the part of plaintiff in this case as far as that item is concerned." With the trial court reviewing the action of the jury in this frame of mind and approving of the verdict, the record must very clearly show that passion or prejudice took the place of evidence in fixing the amount of recovery, in order for this court to interfere. There is no such showing.

There is no assignment of error reaching the proposition that plaintiff failed to produce some of its records asked for by defendant and did not place Branvold, the deputy state bank examiner, on the witness stand. As to failure to produce this witness, the answer is that he could have been subpoenaed by defendant if it deemed his testimony material. And as to the absence of some of the bank records called for at the trial, either the materiality is not shown or else their presence was deemed so unimportant that no real effort was made to have them produced. No request was made to instruct the jury concerning the inference permissible when evidence is not adduced by the party having access thereto.

On the oral argument complaint was made that prejudice resulted from the reception of testimony on the Kivijarvi matter. In order to help Kivijarvi mislead his creditors, Anderson allowed him to give plaintiff a note for $700, secured by a chattel mortgage upon

a truck he owned. The chattel mortgage was recorded and the $700 entered as an asset of the bank which went into dividends thereafter declared. The note was without consideration, and Anderson gave Kivijarvi a deposit slip which upon presentation to the bank entitled him to a return of the note. On defendant's motion the court instructed the jury that in determining the amount of plaintiff's loss the Kivijarvi transaction could not be considered. There is no error assigned on the reception of this testimony. Moreover, the court granted all the defendant asked in its motion in reference thereto.

Where so many items go to make up the amount of a verdict there may be some difficulty in demonstrating its accuracy. But we think the evidence furnishes more than conjecture for the sum fixed.

The order is affirmed.