# Morris v. Commonwealth.

January 20, 1948.

Chester D. Adams, Judge.

350

Fritz Krueger for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Appellant lived with his father, Wash Morris, near the "Sheep Lot" outside but near the limits of the City of Monticello, in Wayne County. In the late afternoon of December 22, 1946, appellant, with two companions, was in the Sheep Lot drinking intoxicating liquor. J. J. Gibson, Sheriff of Wayne County, and a city policeman, approached them, and appellant fled toward his home. Gibson pursued him, and when within 20 or 30 feet of the Morris residence, was shot from ambush. The bullet

entered the Sheriff's mouth, causing instant death. One witness testified that appellant previously had threatened to kill the deceased, and another testified that appellant offered him $25 if he would kill the deceased. It is further proven in evidence that appellant was engaged in the illicit traffic of whisky, and that he and the Sheriff had had trouble on this account. The only eye-witness to the tragedy testified that he saw appellant fire the lethal shot through an opening in a window. Appellant was indicted by a Grand Jury of Wayne County, and when the case was called for trial moved the Court for a change of venue, alleging that the feeling against him was so high in Wayne and the other counties of the Twenty-Eighth Judicial District, viz., Rockcastle, Pulaski, and Clinton, that he would be unable to obtain a fair trial in that District. In response to this affidavit the Commonwealth's Attorney filed his own, wherein he admitted that appellant could not obtain a fair trial in the Twenty-Eighth Judicial District, and further alleged that he likewise could not obtain a fair trial in either McCreary or Russell County, which were the only remaining counties contiguous to Wayne. The Court entered an order sustaining the motion for a change of venue, and in the order recited that, of his own knowledge, the defendant could not obtain a fair trial in any of the counties we have named, and transferred the case to the Fayette Circuit Court for trial. Appellant excepted to so much of the order as transferred the case to Fayette County. Upon the trial, appellant was convicted and sentenced to death in the electric chair.

On this appeal appellant contends that the Wayne Circuit Court erred in removing the case to Fayette County, because it was not shown that he could not obtain a fair trial in a county nearer or more convenient to his home; and the Fayette Circuit Court erred (1) in admitting incompetent evidence; (2) in instructing the jury; and (3) in overruling his objections to improper argument by the Commonwealth's Attorney.

KRS 452.210 provides: "When a criminal or penal action is pending in any circuit court, the judge thereof shall, upon the application of the defendant or of the state, order the trial to be held in some adjacent county to which there is no valid objection, if it appears that

the defendant or the state cannot have a fair trial in the county where the prosecution is pending. If the judge is satisfied that a fair trial cannot be had in an adjacent county, he may order the trial to be had in the most convenient county in which a fair trial can be had."

KRS 452.220, Subsection (2), provides: "* * * If objections to all the adjoining counties are made and sustained, the change (of venue) shall be made to the nearest county to which there is no valid objection, preference being given to counties of the same judicial district."

Section 7 of the Constitution of Kentucky provides that the ancient mode of trial by jury shall be held sacred; and Section 11 of that instrument provides that the defendant shall have a speedy public trial by an impartial jury of the vicinage.

These statutory and constitutional provisions are clear and mandatory. In Conley v. Commonwealth, 229 Ky. 358, 17 S. W. 2d 201, 202, the crime was committed in Morgan County, and upon application for a change of venue the case was transferred to Carter County, which was not adjacent to Morgan, although it was but one county removed therefrom. No showing was made that a fair trial could not be had in a county adjacent to Morgan. We reversed the judgment in that case, because the Court did not transfer the case to an adjacent county. In the course of the opinion the author quoted from Kennedy v. Commonwealth, 78 Ky. 447: " 'These provisions, construed together, seem to contemplate that a change of venue shall always be made to an *adjoining* county, unless objection be taken to all of such counties, and it is only when there is no adjoining county to which objection has not been taken and sustained that the change is "to be made to the nearest county to which there is no valid objection.' "

The Court further said: "Under the statute, when a change of venue is had because a fair trial cannot be had in the county where the indictment was found, the removal must be to an adjoining county, unless objection is established to all adjoining counties. In the absence of such a showing, the removal should be had to the most

convenient adjoining county to which no objection is shown.''

So far as we know, there has been no departure from this construction of the provisions of the Statutes and Constitution above referred to. In this case there are twenty-two counties nearer Wayne than Fayette, and in order to travel to Fayette from Wayne it is necessary to pass through the counties of Lincoln, Garrard, and Jessamine, each and all of which are nearer, and obviously more convenient to persons traveling from, Wayne. It is apparent that the Wayne Circuit Court erred in transferring the case to Fayette County.

The objection to the testimony complained of is that the Commonwealth failed to establish that the bullet which caused the death of the Sheriff was in the same condition when taken from the body of the deceased as it was when tested and compared with like bullets in the laboratory of the Federal Bureau of Investigation in Washington, and concerning which tests one of the investigators for the Federal Bureau testified. As indicated, technicians of the Federal Bureau of Investigation fired test bullets from the rifle which it was shown was in the possession of appellant at the time the shooting occurred. The patterns on these bullets were compared with the pattern made on the lethal bullet by the lands and grooves in the rifle. One of the test bullets and the lethal bullet were placed in a comparison microscope, which consists of two separate microscopes joined by a common eyepiece. By looking through the single eyepiece, the technician can view the articles on the separate stages of the microscopes at the same time, thus enabling him to study the minute markings and patterns on each of the specimens, and compare their similarity by holding one stage stationary and revolving the other on its axis until the patterns, if identical, merge. The investigator for the Federal Bureau testified that the lands and grooves marks on the bullet which killed the Sheriff were identical with the lands and grooves marks on the test bullets. The result of the test itself proves the veracity of the lethal bullet. It is inconceivable that a person could make marks on a spent bullet which would be identical with the marks on a bullet fired in a test. We think the evidence was competent.

The next complaint concerning the evidence is that the cartridge case or empty shell shown to have been fired by the rifle tested was found in a search of appellant's residence which was neither authorized by warrant nor by consent of appellant. Appellant lived in the home of his father. The officers who searched the dwelling asked the father, who was the head of the house, for permission to search the house; he consented to the search, and the evidence obtained was found in the kitchen which was under the control of the father. We invariably have held that the head of a house, or the one in charge of the house at the time a search is made, may consent to its search, and such consent will render competent the evidence thus obtained. It is not necessary for the defendant himself to give consent, unless he is the head of the house or in charge of the premises at the time the officers commence the search. Gray v. Commonwealth, 198 Ky. 610, 249 S. W. 769; Gilliland et al. v. Commonwealth, 224 Ky. 453, 6 S. W. 2d 467.

Finally it is argued that the Court erred in not instructing the jury on voluntary manslaughter. The defense in this case was an alibi, and there was no evidence of a struggle. The deceased met his death by a shot fired from ambush. The crime, by whomever committed, was murder; there was no evidence to support a manslaughter instruction. Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318, and cases therein cited.

Since the case must be reversed for another reason, it is unnecessary for us to determine the prejudicial effect of the closing argument of counsel for the Commonwealth. On the next trial, he will refrain from the type of argument complained of by counsel for appellant.

The judgment is reversed, with directions that it be set aside and the case remanded to the Wayne Circuit Court for further proceedings consistent with this opinion.