## STATE v. HENRY F. WALTERS.

113 N. W. (2d) 468.

February 9, 1962—No. 38,087.

*Joseph Robbie* and *Jerome Fitzgerald,* for appellant in supreme court.

*Mitchel Kirshbaum,* for appellant in trial court.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *John P. Frank,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

This is an appeal by Henry F. Walters from his conviction for the crime of robbery in the first degree committed May 12, 1959, in the offices of Typographical Union No. 30 located on the 5th floor of the Labor Temple at 418 Auditorium Street, in the city of St. Paul.

Essentially the defendant's attack on the verdict is based on his claim that the victim's identification of the robber and the circumstantial evidence presented by the state are not sufficient to establish defendant's guilt beyond a reasonable doubt.

It appears that on May 5, 1959, defendant applied to the St. Paul Typographical Union for assistance in securing employment as a printer. That morning he spent about half an hour in the union office with Mr. Walter Vandelac, the secretary-treasurer and business representative for the union, who succeeded in placing him with the Perkins-Tracy Printing Company. Vandelac next saw defendant a week later between 9:30 and 9:45 in the morning when defendant advised him he was about to depart for Texas to play professional baseball and wished a so-called "traveling card" to facilitate his obtaining work elsewhere. After a visit with Vandelac, defendant was directed to the stenographer in charge of the office who took a check from him and issued him a card. The secretary, Susan Wegleitner, testified that the check which defendant gave her was in the sum of $48.32 and was drawn by Perkins-Tracy Printing Company payable to defendant and endorsed in green ink. She retained the sum of $6.70 for dues and gave defendant change for the balance. The evidence disclosed the existence of two checks issued to defendant by Perkins-Tracy in identical amounts, one dated May 7th and one May 12th. Miss Wegleitner admitted she was confused as to the date of the particular check she received. However, the testimony made it clear that defendant did not receive the May 12th check until after he had obtained the traveling card. Miss Wegleitner stated that in the presence of defendant and while he had a full view of her actions, she placed his check under a cash box in the center drawer of her desk. While defendant himself did not take the stand, he denies that he paid his dues the morning of May 12th with a payroll check and claims that he used a personal check for that purpose.

During the noon hour of the same day, May 12, 1959, between 12:40 and 12:45, Vandelac was discussing business matters with the union president, Jerome Bilder, in an adjoining room, when he heard the door to his own office close. Thereupon he went to the doorway and discovered an intruder removing cash from a safe and placing it in a large envelope. Upon being discovered, the robber pointed a .32-caliber revolver at Vandelac and ordered him to face the wall. When Bilder appeared shortly thereafter, the robber required him to join Vandelac and both men were then bound with tape. In a few moments, his work being completed, the robber threatened harm to his victims if they attempted to interfere with his escape, and thereupon made his getaway.

Approximately $1,400 was stolen from the safe and a little over $300 from the cash box in the desk together with a number of checks. Miss Wegleitner testified that the check she received from defendant was one of those taken.

Vandelac testified that the robber was masked with a woman's silk stocking drawn tightly over his face, distorting his nose, mouth, and cheeks. He stated that the robber wore a dark shirt, blue denim trousers, and dark leather gloves. His speech was unnatural and his enunciation and diction poor. It was Vandelac's first impression that the robber was colored, but as he approached him in a better light he observed it was a white man with a deep tan. He then recognized him as the defendant Walters who had acquired an unusually dark complexion while living in Florida. Vandelac testified that he came within 3 feet of the robber and was able to look him squarely in the eyes.

It is the contention of defendant that his implication in the crime was inadequately proved as a matter of law by virtue of Vandelac's inability to identify him with absolute certainty. At the preliminary hearing Vandelac testified as follows:

"QUESTION: And it was true then, as it is true now, Mr. Vandelac, that you cannot say absolutely and positively that Mr. Walters committed that robbery, in all fairness to yourself, in all fairness to the defendant?

"ANSWER: Absolutely and positively, no. I would say that I think I did. Though I'm not saying absolutely and positively, no. He had a masquerade costume on.

"QUESTION: It could have been someone else, could it not?

"ANSWER: Well, yes, it could have."

At the trial when cross-examined on whether it was possible the robber was someone other than the defendant, Vandelac answered: "Very remotely."

■ The trial court instructed the jury that identification need not be positive and certain if it is based upon the witness' belief, opinion, or judgment, but the court invited the jury to consider any indefiniteness or uncertainty as factors affecting the weight of the testimony. We believe this charge correctly stated the law in Minnesota. Where, as here, the witness has previously had an adequate opportunity to become acquainted with the defendant, and during the commission of the crime has been in a position to observe at close hand and to form an opinion as to the identity of the person committing the offense, we hold that a jury is warranted in finding the identification has been proved beyond a reasonable doubt, even though the witness concedes the possibility of his being in error. State v. Farmer, 179 Minn. 516, 229 N. W. 789; State v. Lytle, 214 Minn. 171, 7 N. W. (2d) 305.

■ A few days after the robbery the defendant was apprehended in Wisconsin. The record shows that he bought money orders amounting to $1,500 the afternoon of the robbery, and that on the following day he purchased from a jeweler in Portage, Wisconsin, three rings for about $230. The jeweler received as part payment a check for $48.32, drawn to defendant's order by Perkins-Tracy Printing Company, dated May 7, 1959, and endorsed in green ink by defendant. The other payroll check for an identical amount, paid to defendant the morning of the robbery, was cashed for him and deposited in her own account by a woman who was in defendant's company during the time he was in Portage. The weight and credibility of the testimony of this witness as well as that of the jeweler and Miss Wegleitner were clearly matters for the jury to determine. If the jury accepted their testimony as the truth, which they had a right to do, the circumstantial

evidence clearly established defendant's guilt beyond a reasonable doubt. For if defendant gave Miss Wegleitner either one of these payroll checks, and if it was stolen in the robbery, the fact that he produced and cashed it immediately following the crime would be almost conclusive evidence of his implication.

While the other circumstantial evidence is not strong, there was testimony that the police officers who apprehended defendant found in his car a shirt and trousers resembling those worn by the robber, as well as a .32-caliber revolver and a partial roll of 4-cent stamps similar to one which was stolen in the robbery. Whether this testimony alone would be sufficient to sustain a conviction we need not decide.

■ One other assignment of error requires comment. Defendant subpoenaed at the trial the records of the Leland Hotel where he had been residing prior to the robbery. He now claims they would have established an alibi by proving he was checking out at the time of the offense. The hotel clerk appeared and testified that the records were in the possession of a detective, Erwin Jahnke, who was then out of the city. Defendant's counsel did not examine this witness to determine the hour when defendant checked out or whether the hotel records disclosed the checkout time, and there is no evidence in the case to indicate what they showed. Detective Jahnke was called by the state as a rebuttal witness, but defendant's counsel neither demanded that he produce the hotel records nor did he examine him with respect to their contents. Although defendant now complains that this constituted a suppression of evidence by the state, we regard such contention as wholly without merit in view of defendant's failure to demand the records from the witness who had custody of them, or make any timely request to the court that they be produced. Farmers & Merchants State Bank v. National Surety Co. 163 Minn. 257, 203 N. W. 969. In any event, there is no showing that they would have established an alibi.

We therefore conclude that the defendant's identification by Vandelac and the circumstantial evidence of his implication are sufficient to justify the jury in finding him guilty beyond a reasonable doubt, and the conviction is therefore affirmed.

■ Since it appears to our satisfaction that defendant is unable by reason of poverty to pay his counsel all of the costs for perfecting

this appeal, and that a review of his conviction was sought in good faith and upon reasonable grounds, it is ordered that counsel for appellant be paid the sum of $362.09 by the county treasurer of Ramsey County upon being furnished with an appropriate certificate by the clerk of the supreme court pursuant to Minn. St. 611.07, subd. 2.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.