Charles James REEVES

v.

**WARDEN, MARYLAND PENI-
TENTIARY.**

Civ. No. 13418.

United States District Court
D. Maryland.

March 5, 1964.

Morton P. Fisher, Jr., Baltimore, Md., court-appointed attorney, for petitioner.

Franklin Goldstein, Asst. Atty. Gen. (Thomas B. Finan, Atty. Gen., Baltimore, Md., on the brief), for respondent.

THOMSEN, Chief Judge.

This is a petition for a writ of habeas corpus filed by a State prisoner who is serving a life sentence after having been convicted of rape by Judge Byrnes sitting without a jury in the Criminal Court of Baltimore City.

### Statement of Facts

This brief statement of facts will be supplemented by separate statements dealing with each of the important points considered. The facts have been found from evidence presented at the hearing in this Court, which included the entire transcript of the trial in the Criminal Court.

On July 23, 1959, about 11:30 p. m., Nancy Austin, then 19 years of age, was raped in her fifth floor apartment at 829 N. Charles Street, Baltimore, Maryland. Her attacker held a broken half-pint vodka bottle to her throat and raped her three times. After about 45 minutes, she escaped from the apartment, and as she ran downstairs her assailant threw the bottle at her, it was further broken into a number of smaller pieces. The police were notified promptly and an examination by a police doctor confirmed the intercourse. Miss Austin described her assailant to the officers, and Sergeant Ford recognized the similarity between the man she described and petitioner, who had previously been convicted of burglary in the same neighborhood. Pe-

titioner's photograph was shown to Miss Austin, along with the photographs of several other men who fitted generally the description she had given. She identified the photograph of petitioner as that of her assailant, and he was arrested the following night. Miss Austin identified petitioner in a line-up and confirmed her identification when she examined him more closely for evidence of a rash on his face. At the trial in the Criminal Court Miss Austin identified petitioner positively; the alibi witnesses presented by the defense were not believed by the trial judge, who dictated an oral opinion stating his reasons for finding petitioner guilty.

Petitioner was represented at his trial by two lawyers, one selected by him or by his family, and the other an attorney with wide experience in criminal cases selected by the family lawyer.

### Proceedings after the Trial

A motion for a new trial was prepared, filed and argued before the Supreme Bench of Baltimore City by another experienced criminal lawyer who was appointed by the Court for that purpose, and who was assisted by the family lawyer. They stressed the absence of circumstantial evidence to support the identification of petitioner. The motion was denied by the Supreme Bench on April 2, 1960. An appeal was taken from the conviction by still another lawyer, who pressed three points,[1] all of which were discussed briefly in the opinion of the Court of Appeals. The judgment was affirmed on March 13, 1961. Reeves v. State, 224 Md. 436, 168 A.2d 353. A writ of certiorari was denied by the Supreme Court on October 9, 1961. Reeves v. Maryland, 368 U.S. 865, 82 S.Ct. 113, 7 L.Ed.2d 62.

Petitioner then sought a writ of habeas corpus in this Court, which was denied by Judge Chesnut because petitioner had not exhausted his State remedies. Thereupon petitioner filed an application under the Post Conviction Procedure Act, Md. Code, Art. 27, sec. 645A et seq., alleging four grounds for relief: (1) illegal search and seizure; (2) that he was framed; (3) that the State suppressed material evidence; and (4) that he was convicted on perjured testimony resulting from inducement by the police or collusion between the police and the State's Attorney. A judge in the Criminal Court denied the application for relief under the PCPA without a hearing. An application for leave to appeal was denied by the Court of Appeals of Maryland, Reeves v. Warden, 231 Md. 613, 188 A.2d 698, because (1) the general allegation of illegal search and seizure without sufficient facts to justify the claim was not a ground for relief under the PCPA; because (2) petitioner's claim that he was framed, without any specification of facts, was too vague and general; and because contentions (3) and (4), having been adjudicated on the original appeal, could not be raised again even though in slightly different phraseology he based his fourth contention on a denial of due process rather than on an abuse of discretion.

### The Present Petition and Hearing

The present petition for a writ of habeas corpus raises the following points: (1) illegal arrest; (2) illegal search and seizure; (3) suppression of evidence; (4) failure of the State to produce certain witnesses known to be helpful to the defense; (5) illegal detention without advice of counsel; (6) inadequate defense; (7) insufficient evidence; (8) petitioner was framed and falsely accused; (9) the State's witnesses gave false and perjured testimony; (10) lack of a fair trial; and (11) the State's Attorney made false and perjured statements in the course of the trial.

1. (1) That the Supreme Bench abused its discretion in failing to require the production of the bottle neck and fragments referred to in the evidence as requested by a subpoena duces tecum; (2) that the trial court was misled by the inaccurate statement of material facts by the State and its witnesses; and (3) that appellant did not receive an adequate defense as required by the due process clause of the Fourteenth Amendment.

Because the hearing in the PCPA proceeding did not meet the requirements set out in Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770, this Court appointed an attorney for petitioner, who made a careful study of the entire record, interviewed petitioner on a number of occasions, prepared the case for hearing, and filed a brief in which he stated that he would press the following points: (A) that petitioner is held in violation of his constitutional rights by reason of the fact that his arrest was illegal; (B) that petitioner was convicted on the basis of illegally seized evidence; (C) that the State suppressed evidence essential to petitioner's defense and thereby denied petitioner a fair trial; (D) that petitioner's representation by counsel was so inadequate as to amount to a denial of due process of law; (E) that the testimony of the State's witnesses was so false and misleading as to amount to a denial of a fair trial; and (F) that petitioner was convicted upon evidence so insufficient as to deny petitioner due process of law. The brief also noted that petitioner wished to preserve and press the points raised by his petition which his counsel did not press.

A hearing was held, at which petitioner was present and testimony was taken for two days. Petitioner was given an opportunity to present any evidence which he wished to offer on all the points raised by his petition and on any other point he desired to raise. Several days later oral argument was heard, and petitioner was given an opportunity to argue any points he wished to argue.

### A. The Arrest

The rape occurred on the night of July 23, 1959, in the victim's apartment at 829 N. Charles Street, and was promptly reported to the police. During the course of the investigation, Sergeant Ford remembered that petitioner had been convicted of burglary a year before in a case which occurred in the same neighborhood and had many similar features, although the victim in the earlier case had not charged rape. Petitioner's photograph was shown to Miss Austin along with the photographs of several other men who fitted generally the description she had given. Miss Austin identified the photograph of petitioner as that of her assailant, and arrangements were made by the police to arrest petitioner the following night. Such arrests are generally made during the night, to minimize the chance of warning and escape. No warrant for the arrest was obtained or sought.

Petitioner was living in a house, 2527 W. Fairmount Avenue, which his older sister was buying and which was also occupied by his mother and niece. The police were admitted to the house at 5:45 a. m. by the sister, who was returning home. They arrested petitioner in his room, to which they had been directed by the sister, and drove him to the station for questioning. Petitioner was not handcuffed. The police seized some of petitioner's clothing which had been lying on a chair in his room, but no evidence based on such clothing was offered at the trial and it has not been shown that the clothing led the State to any evidence that was offered. One officer testified, however, that on the way to the station petitioner said, "If I had known you were out there I would have went over the roof, you wouldn't have got me." The trial judge stated in his oral opinion: "That is a strong indication of a guilty conscience." No other statement by petitioner was offered in evidence, and there is no evidence that he made any admission.

Counsel for petitioner argues that the arrest without a warrant violated petitioner's constitutional rights, and that the offering in evidence of the statement made in the automobile while petitioner was under arrest was a denial of due process. He objects because the arrest was made at night, without a warrant, although there had been time to obtain a warrant after the victim had identified petitioner's photograph as that of her assailant.

■ The legality of the arrest must be determined by state law, unless there has been a violation of petitioner's rights under the Fourteenth Amendment. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 and cases cited therein. Under Maryland law a peace officer may arrest without a warrant, provided there were reasonable grounds to believe at the time of the arrest that a felony had been committed and that the person arrested had committed the offense. Mulcahy v. State, 221 Md. 413, 421, 158 A.2d 80. Federal law is in accord. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879, cited in Ker v. California, supra. The police had reasonable grounds for such belief in this case. It was not necessary that the officers obtain a warrant merely because they had time to do so. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The reason given by the officers for arresting at night, to minimize the chance of warning and escape, is not inconsistent with federal constitutional guaranties. "The States are not * * * precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain. See Jones v. United States, 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697] (1960). Such a standard implies no derogation of uniformity in applying federal constitutional guarantees but is only a recognition that conditions and circumstances vary just as do investigative and enforcement techniques." Ker v. California, 374 U.S. at 34, 83 S.Ct. at 1630, 10 L.Ed.2d 726.

Petitioner cites Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514, in which the Court held a search and seizure illegal because the officers had forcibly entered the defendant's home without a warrant for the purpose of making a search. In the Supreme Court the government contended for the first time that the search could be justified as having been made in connection with an arrest. The Court said:

"These contentions, if open to the Government here, would confront us with a grave constitutional question, namely, whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no reason appears why an arrest warrant could not have been sought, is consistent with the Fourth Amendment." 357 U.S. at 499–500, 78 S.Ct. at 1257, 2 L.Ed. 2d 1514.

That question does not arise in the present case because there was no forceful entry. In Morrison v. United States, 104 U.S.App.D.C. 352, 262 F.2d 449, also cited by petitioner, the officers entered a suspected felon's house to make a search; the suspected felon was not in the house and no arrest was made at the time, but the officers seized evidence of the offense. And in Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456, the officers broke down the door. These cases do not support petitioner's contention that his arrest was illegal.

■ The so-called "statement" was a voluntary comment made by petitioner in the automobile on the way to the station. Petitioner denies making the comment, but does not contend that it was obtained by force or trickery, merely that it was made while he was under arrest. In Maryland the test of admissibility of a confession is whether or not it is the "voluntary act of the accused". Prescoe v. State, 231 Md. 486, 489, 191 A.2d 226 (1963).

Even if the arrest had been illegal, it would not necessarily follow that the statement was inadmissible. The Supreme Court has repeatedly applied voluntariness as the test of admissibility of a confession in a State criminal prosecution. Haynes v. Washington, 373 U.S.

503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037. In Prescoe v. State, supra, the Court of Appeals of Maryland held, Chief Judge Brune dissenting, that Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441, does not change that test, with respect to State criminal prosecutions. 231 Md. at 494, 191 A.2d 226. To the same effect are Stewart v. State, 232 Md. 318, 193 A.2d 40; Peal v. State, 232 Md. 329, 193 A.2d 53.[2] Since this Court has found that the arrest in the present case was legal, the conflict in the views of the Maryland Court as to the effect of Wong Sun v. United States may abide its resolution by the Supreme Court or by an appropriate federal court in a case in which the question must be decided.

■ In Wong Sun v. United States the government contended that Toy's statements made immediately after his arrest were admissible as an independent act of free will. Rejecting that contention the Supreme Court held that on the facts relating to Toy's arrest it would be "unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." 371 U.S. at 486, 83 S.Ct. at 416, 9 L.Ed.2d 441. In the case at bar it may be that the comment made in the automobile was "sufficiently an act of free will" to purge any "primary taint," if there had been an unlawful arrest. But since this Court has found that the arrest was not unlawful it need only rule that the statement was admissible because it was voluntarily made.

### B. Search and Seizure (The Yellow Paper)

Petitioner contends that he was convicted on the basis of illegally seized evidence, specifically a memorandum on a yellow sheet of paper. The State replies that there was no illegal search or seizure, that petitioner's counsel at the trial did not object to the admission of the paper, probably because he felt it helped petitioner, and that its admission was at most harmless error. The facts on this point are as follows:

On July 28, three days after the arrest, Sergeant Ford and Officer Lesnick returned to 2527 W. Fairmount Avenue without a search warrant and were admitted by petitioner's mother in the absence of his sister. They were permitted by the mother to search the house, including petitioner's room, which served as a passage to the mother's room. In his room, in the drawer of a bureau or chest devoted to the storage of his clothes, the police found and took with them three more pairs of petitioner's pants and a yellow piece of paper, on which were written some of petitioner's activities from 9:00 a. m. to 8:30 p. m. on July 23, the day of the rape. The mother told the officers that the paper had been written by petitioner's niece, then about 12 years old, and testified at the habeas corpus hearing in this Court that it had been prepared as the result of a suggestion made to the mother by one of the officers that it might help petitioner if she could remember what he had done on the day in question. Sergeant Ford admitted that he had suggested to the mother that she list her son's activities but testified that he did so after he had received the yellow paper. The Court accepts the mother's testimony on this point. The police submitted the paper to handwriting experts, together with specimens of the writing of petitioner, his mother and his niece. The report was inconclusive.

In his opening statement at the trial the prosecuting attorney, who had not sufficiently examined the file nor conferred with Sergeant Ford, said: "That when the police went to the home of

---

2. See also Smith v. Heard, 5 Cir., 315 F.2d 692 (1963), where the Court reached a similar conclusion, based on a consideration of Culombe v. Connecticut, supra, and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, without discussing Wong Sun v. United States, although that case had been decided some months before.

Charles James Reeves and picked him up * * * they found under a shirt in his bureau drawer a yellow slip of paper * * * saying Thursday, Thursday was the date of this rape and * * * it looks like a schedule in full detail of the whereabouts on that day, six to six-thirty, cleaning kitchen, 6:30 to 6:45 watch television, et cetera, met Paul, and with no other day but on this day and this day alone attempting to outline his movements virtually minute by minute, certainly every half hour, and on the basis of that and of course primarily upon the positive identification of the young lady * * * we think the State will prove beyond all reasonable doubt that this defendant, Charles James Reeves, is guilty of rape * * * ". This erroneous statement was not immediately corrected because the police officers and other witnesses had been excluded from the courtroom during the opening statement. However, the paper was shown to Sergeant Ford while he was on the witness stand; he testified where and when it had been found, and stated that he had been told by the mother that the niece had written it. The State thereafter offered the paper in evidence, and it was admitted without objection. On cross-examination by counsel for petitioner, Sergeant Ford testified that the mother had told him that the notes written on the paper were all that she could remember about petitioner's activities on the day of the rape.

This Court finds that petitioner did not write the note, that it did not belong to him, that it was never in his possession, and that it was placed in his bureau drawer probably by his mother, possibly by his niece.

This Court accepts the testimony of the prosecuting attorney given in this Court that he had been surprised by the testimony of Sergeant Ford and that he did not rely on the paper in his closing argument; indeed, he did not mention it again. But he did not withdraw the contention which he had made in his opening statement, quoted above, nor admit that the paper was not written by defendant. The trial judge did not list the paper among the items of evidence on which he relied nor otherwise refer to it in his oral opinion.

■ On the original appeal from the conviction, counsel for petitioner argued that the trial judge had been misled by the opening statement of the prosecuting attorney and by the fact that the prosecutor had not specifically admitted at the trial that the paper had not been written by petitioner. In preparing the record for appeal the Assistant Attorney General stipulated with counsel for petitioner that the paper had not been written by petitioner. The Court of Appeals said:

"The appellant can not prevail upon the second question. The discrepancy between the prosecutor's opening statement (which was not evidence in this case) and the proof, as disclosed by the record, was only trivial and fully explained by the testimony of the witness, Sergeant Ford. Moreover, the case was tried before the Court without a jury, and we must conclude that he was not misled in any way in evaluating the evidence and reaching his conclusion." Reeves v. State, 224 Md. at 438, 168 A.2d at 354.

Although this Court does not agree that the discrepancy was trivial, the facts were fully and fairly stated in the testimony of Sergeant Ford, and this Court finds that the experienced and able trial judge was not misled in evaluating the evidence and reaching his conclusion.[3]

■■ Petitioner has standing to challenge the search of his room and the

---

3. In his application under the PCPA, petitioner made a general allegation of illegal search and seizure without facts to justify the claim. In its order denying relief under the PCPA, the Criminal Court (Cardin J.) stated merely that illegal search and seizure was not grounds for relief in a post conviction proceeding. The Court of Appeals said: "Contention (1) is merely a general allegation of illegal search and seizure. Such an allegation of a denial of constitutional rights, with-

seizure of any papers or other property which belonged to him. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. His mother had no right to authorize a search of any part of the chest or bureau which was set aside exclusively for petitioner's use, even though she washed his clothes and placed them in one of the drawers. United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019; Holzhey v. United States, 5 Cir., 223 F.2d 823. The principles applied in those cases are probably now binding on the States. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Belton v. State, 228 Md. 17, 178 A.2d 409. Cf. Ker v. California, 374 U.S. at 33, 83 S.Ct. at 1629. In view of Hall v. Warden, 4 Cir., 313 F.2d 483, they must be applied by this Court in this case, even though the conviction now being considered was affirmed on appeal before the decision of Mapp v. Ohio, and the Supreme Court denied certiorari a month or so after it had decided the Mapp case. Reeves v. Maryland, 368 U.S. 865, 82 S.Ct. 113, 7 L.Ed. 2d 62.

■ Petitioner's mother did have the right to authorize a search of any part of the chest or bureau which she used for her own purposes, e. g. as a repository for the yellow paper on which she and her granddaughter were making notes.

■ The Court finds from the evidence that the mother voluntarily consented to the search and to the removal by the police of petitioner's trousers and the yellow note. She had no right to consent to the search for or the taking of petitioner's clothing, which belonged to him and which could not have been instruments of or fruits of the crime. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, reh. den. 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; United States v. Rees, D.Md., 193 F.Supp. 849, 855, and other cases cited therein. But the mother

had the right to consent to the search for and the taking of the yellow paper, which belonged to her or to her granddaughter and not to petitioner. No constitutional right of petitioner was violated thereby. A different question would be presented if the clothing or any evidence to which the clothing furnished a lead had been offered at the trial.

■ Moreover, petitioner cannot now object because the paper was admitted in evidence, even if it had been illegally seized. Quite apart from the rule announced by the Supreme Court in Mapp v. Ohio, the paper could not have been admitted in evidence if petitioner's counsel had objected to it, because there was nothing to indicate that petitioner had written it or that any other ground existed for its admission over objection. Petitioner's counsel did not object to its admission, no doubt because he felt that it *helped* petitioner rather than hurt him. It showed that the mother and the little girl recalled petitioner's activities on the day of the rape to be the same as those testified to by petitioner when he took the stand, and made it unnecessary to put the mother on the stand to prove those facts. Counsel may have had various reasons for not wishing to put the mother on the stand; he did not do so, and the attorney for petitioner at the present hearing elected not to question him on that point.

■ At most, the admission of the paper was harmless error, and therefore not a ground for reversal of or relief from the conviction under Maryland law. Hopkins v. State, 193 Md. 489, 499–500, 69 A.2d 456. In Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, the majority opinion did not reach the question whether the State's rule as to harmless error could apply, because the majority found that the admission of the evidence was prejudicial. In the present case the yellow paper was probably helpful to petitioner, for the reason

out sufficient facts to justify the claim, is not a ground for relief under the P.C. P.A. Daniels v. Warden, 222 Md. 606,

158 A.2d 763." Reeves v. Warden, 231 Md. at 614, 188 A.2d at 699.

stated above; in any event it can be stated with some assurance that it was not harmful, because the trial judge listed the evidence on which he relied to convict, and did not refer to the memorandum.

Petitioner's constitutional rights were not violated by the search and seizure nor by the use made of the yellow paper.

### C. Alleged Suppression of Evidence

▮ Petitioner claims the State suppressed: (1) the pieces of the broken bottle held at the victim's throat and later thrown down the steps; (2) results of various tests performed on petitioner's clothing; (3) results of tests for paint fragments and fingerprints in the room where the attack occurred; and (4) results of lie detector tests. None of this material was requested by petitioner's counsel before or during the trial, and none of it was offered in evidence by the State. The State would surely have offered any item which tied petitioner to the crime. The experienced trial judge must have known that the failure of the State to offer such evidence meant that it had no such evidence which was favorable to the State. The important fact —that petitioner's fingerprints did not appear on the bottle fragments—was testified to by the police at the trial. Although the other items did not tie petitioner to the crime, they did not exculpate him, and did not implicate anyone else.

The absence of such evidence may well have been argued to the trial judge by petitioner's attorney in his unreported closing argument; it was certainly argued on the motion for new trial, at which petitioner's attorney was told that the bottle fragments had been lost. However, a scale photograph of the fragments was produced and was included in the record on appeal. The Court of Appeals said:

"As to the first question, the appellant contends that the Supreme Bench of Baltimore City, in hearing the motion for new trial, abused its discretion in not considering and viewing the fragments of the broken pint Vodka bottle which was the weapon employed to intimidate the victim and to cause her submission. The record does not affirmatively show that the broken bottle fragments were introduced at the trial but their size and condition were described and the fact that no fingerprints were found on them or anywhere in the victim's apartment was revealed. At that time it was reported that the fragments had been lost, but it later developed that the police had the fragments and the appellant obtained a photograph thereof, which was included in the transcript although not put in evidence below. Moreover, the appellant in his defense, relied not upon the consent of the victim, but upon insufficiency of identity. From the above facts we can find no prejudice in the absence of the bottle fragments at the hearing of the motion for a new trial." Reeves v. State, 224 Md. at 437–438, 168 A.2d at 354.

There was no suppression of evidence by the State.

### D. Adequacy of Representation

▮ At the hearing in this Court petitioner withdrew his charge that he had been inadequately represented on his motion for new trial, but he still charges inadequate representation at the trial on several grounds: (1) Because his counsel failed to demand from the State the result of the various tests referred to in C above. As noted there, the absence of fingerprints on the bottle was proved, and the failure of the State to offer evidence with respect to other items was obvious. (2) and (3) Because of his failure to call various possible witnesses. Petitioner does not show that the testimony of these witnesses would have helped him. For this and other reasons the point is without merit. (4) Because of his failure to disprove what petitioner and his present attorney call a "false statement" by Sergeant Ford in an an-

swer to a question on cross-examination as to why he had originally suspected petitioner of the crime. The witness had started to explain the similarity between this crime and the previous crime of which petitioner had been convicted, but was interrupted by counsel for petitioner before he could complete the answer. When the facts were more fully stated, as they were a moment later, it is clear that there was no charge of rape in connection with the previous burglary, and no false statement by the witness.

### E. False Testimony

 The charge of false testimony is based on two grounds: (1) Sergeant Ford's interrupted answer, described in D. The witness had reason to believe that the modus operandi in the instant case was practically identical with that of the previous case, although there is still some disagreement between the State and petitioner's present counsel as to the degree of similarity between the present crime and the burglary of which petitioner was previously convicted. (2) A misrecollection of the size of the bottle fragments by one of the other officers, whose testimony showed that his recollection was unsure.

Petitioner's representation at his trial was up to the average of such representation in serious cases in the Criminal Court of Baltimore City. The strategy and tactics used succeeded in avoiding a death sentence, which might well have been imposed, in view of the brutality of the crime and petitioner's burglary conviction the previous year. There was no deprivation of any constitutional right. Snead v. Smyth, 4 Cir., 273 F.2d 838; Turner v. State, 4 Cir., 303 F.2d 507; 318 F.2d 852.

### F. Sufficiency of the Evidence to Convict

Petitioner's arguments on this point and on other points not heretofore covered are too trivial to warrant discussion.

The Court thanks petitioner's court-appointed counsel for the diligence with which he prepared his case, and compliments counsel for both sides on the fairness and ability of their respective presentations.

The writ of habeas corpus is hereby denied, and the petitioner is remanded to the custody of respondent.