## STATE v. GREGORY GENE KINDERMAN.

136 N. W. (2d) 577.

June 25, 1965—No. 38,954.

*John E. Castor,* for appellant.

*Robert W. Mattson,* Attorney General, *William B. Randall,* County Attorney, and *Henry W. Pickett, Jr.,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

Defendant appeals from a conviction based on an information al-

leging that on April 11, 1962, he robbed a bar in Ramsey County of a sum in excess of $100 while aided by an accomplice and armed with a loaded pistol. Defendant assigns as error (1) the court's ruling that the record might show defendant was identified by a witness; (2) the insufficiency of evidence to support a finding of guilt; and (3) the receipt in evidence of a gun and items of clothing obtained by a search and seizure without a warrant.

Witnesses for the state testified that on April 11, 1962, at about 11 a. m., two men entered Obb's Tavern at 1347 Burns Avenue and while one held a nickel-plated gun on the employees and patrons the other jumped over the bar and took the contents of the cash drawer. A witness living in the vicinity had previously noticed two young men heading toward the bar and afterward saw them running back to their parked car. Because of their suspicious behavior, the witness wrote down the license number of the automobile while it was parked. She reported her observations to the police shortly after the hour of noon when news of the holdup was broadcast on the radio. With the aid of this description, the police determined that the car was owned by defendant and proceeded to his home at 1316 Margaret Street, where he was arrested at about 12:30 p. m. while still in the automobile. There were found on his person 33 one-dollar bills and 21 ten-dollar bills.

Having been notified by the police of his son's arrest defendant's father returned from his place of employment to his home where he met Officer John Splinter at about 3 o'clock in the afternoon. At the hearing on a motion to suppress evidence, the officer testified that he explained to Mr. Kinderman, Sr., that he was under instructions to search the premises for evidence in connection with the holdup of the tavern. He stated:

"A. Generally I explained to him why I was there, what I came there to look for I might find, I explained it isn't necessary that he give me permission.[1] He told me that anything that didn't belong

---

[1] We construe Officer Splinter's statement, "I explained it isn't necessary that he give me permission," to mean that the elder Kinderman had a right to deny him admittance. We do not infer the officer was asserting a right to enter with or without permission since Kinderman, Sr., did not take the

there wasn't supposed to be in the house, he wanted it out of the house, words to that effect.

"Q. When you said you explained to him why you were there, what did you tell him the reason you were there?

"A. To my knowledge I told him that we had reason to believe his son was involved in a robbery of the Obb's Tavern and I had come there to look and search the boy's room for any possible evidence that could connect him with it.

"Q. What did Mr. Kinderman say to that?

"A. He offered to let me search the room and the house itself.

\* \* \* \* \*

"Q. What part of the home did you search, sir?

"A. Mr. Kinderman and myself went to the Gregory room which is on the second floor and we started our search in his bedroom.

"Q. And did you remove anything from the bedroom?

"A. From the closet in the bedroom, yes, located a small nickel plated revolver underneath some clothes in the closet in the room.

"Q. Did you remove it from the bedroom?

"A. This closet was connected with the bedroom, yes.

"Q. Did you take the gun into your possession?

"A. Yes, I did.

"Q. At the time you found this gun was Mr. Kinderman present?

"A. Yes, he was standing just a few feet away from me, he watched what I had done and where I found it.

\* \* \* \* \*

"A. I and Mr. Kinderman found two green jackets and a gray hat and a pair of blue jeans and two pair of sunglasses in the basement.

"Q. At that time did Mr. Kinderman allow you to take these into your possession?

"A. Yes, he did."

Because the gun, sunglasses, and items of clothing were secured from his home without a search warrant, defendant moved to suppress

---

stand to suggest he was in any way misled, and no point is made of the ambiguity by defendant.

them as evidence on the ground the search and seizure were unreasonable. The motion was denied, and a similar objection to the introduction of the evidence at the trial was overruled.

■ A witness who was in the bar at the time of the holdup, when asked if anyone *resembled* either of the robbers, answered in the affirmative and pointed to the defendant. Thereupon, the prosecutor secured the consent of the court to have the record reflect that the witness on the stand *identified* the defendant. Defendant asserts that as a matter of law there was no identification by any witness of sufficient certainty to permit the court to submit the issue to the jury. The court in his charge advised the jury that no eyewitness was able to make a positive identification. While we agree that it was not entirely accurate to characterize the resemblance as an identification, no exception was taken at the time, and the court fully covered the matter in his instructions in the manner indicated. In any case, it is not necessary as a matter of law that identification be positive and certain, and where, as here, there was ample circumstantial evidence to connect defendant with the crime, we cannot say the verdict must fall for want of adequate identification.[2]

■ Defendant earnestly contends that in the absence of positive identification the circumstantial evidence does not justify a conviction. Without attempting to recite all of the evidence implicating defendant, we find the record is sufficient to sustain the verdict. An eyewitness reported defendant's license number to the police shortly after noon; the defendant was apprehended within half an hour and was found to have $243 in small bills on his person, the source of which he apparently did not explain until after the trial when at the presentence examination he said he received it from an insurance settlement; a cap, jacket, pants, and sunglasses found in the basement of defendant's home were identified by witnesses as resembling those worn by one of the robbers; defendant's alibi that he was in Hudson, Wisconsin, playing pool was substantially impeached by employees of the poolhall, one of them a North Hudson policeman who testified he habitually kept track of out-of-state licenses; and defendant's claim that he

---

[2]State v. Walters, 262 Minn. 26, 29, 113 N. W. (2d) 468, 470.

left his car in front of his home on the morning of April 11 and found it there when he returned was discredited by the testimony of a neighbor who stated that the car was gone as early as 9:30 a. m. that day. Notwithstanding the failure of any witness to identify the defendant positively as one of those taking part in the robbery, we hold there was adequate incriminating evidence to permit a finding of guilt beyond a reasonable doubt.

■ It is next contended by defendant that the gun, sunglasses, and items of clothing taken from the premises were the product of an illegal search without a warrant and should not have been received in evidence. He claims that his right to be protected from unreasonable searches and seizures under U. S. Const. Amend. IV and Minn. Const. art. 1, § 10,[3] could not be waived by the father. Reliance is placed upon Stoner v. California, 376 U. S. 483, 84 S. Ct. 889, 11 L. ed. (2d) 856, rehearing denied, 377 U. S. 940, 84 S. Ct. 1330, 12 L. ed. (2d) 303, where evidence used to convict the defendant was acquired by police officers in a search of his hotel room made without a warrant during his absence and with the consent of the hotel clerk. It was there held that the search was unlawful because it was not an incident to a lawful arrest and because the hotel clerk could not lawfully consent to the search of his room. The court was of the view that a guest in a hotel, like a tenant of a house or occupant of a room in a boarding house, is entitled to constitutional protection against unreasonable searches and seizures and that protection would disappear if it were left to depend upon the unfettered discretion of an employee of a hotel.

But in this case the consent was given by the father who did not wish to have property on his premises which did not belong there, and who joined with law enforcement officers in determining if such a fact were true. We can agree that the father's "house" may also be that of the child, but if a man's house is still his castle in which his rights are superior to the state, those rights should also be superior to the rights of children who live in his house. We cannot agree that a child, whether he be dependent or emancipated (defendant was 22 years of age at

---

[3]See, also, Minn. St. 626.01 to 626.04.

the time of his arrest), has the same constitutional rights of privacy in the family home which he might have in a rented hotel room. In considering the reasonableness of a search of a home when the search is consented to by the father, the protection afforded to the child must be viewed in light of the father's right to waive it.

The precise question of the right of the father to waive the protected rights of a child to be secure in his "house" and "effects" and to effectively consent to a search of a room occupied by the child has never been passed upon by the Supreme Court of the United States. The general subject has been discussed in numerous authorities. From these authorities it would appear that the validity of such searches and seizures rests upon the right of control over the premises by the one who gives the consent. 31 A. L. R. (2d) 1081; United States ex rel. McKenna v. Myers (E. D. Pa.) 232 F. Supp. 65; Gray v. Commonwealth, 198 Ky. 610, 249 S. W. 769; Rees v. Commonwealth, 203 Va. 850, 127 S. E. (2d) 406; Woodard v. United States, 102 App. D. C. 393, 254 F. (2d) 312, certiorari denied, 357 U. S. 930, 78 S. Ct. 1375, 2 L. ed. (2d) 1372; Abel v. United States, 362 U. S. 217, 80 S. Ct. 683, 4 L. ed. (2d) 668; Holzhey v. United States (5 Cir.) 223 F. (2d) 823; Tomlinson v. State, 129 Fla. 658, 176 So. 543; People v. Galle, 153 Cal. App. (2d) 88, 314 P. (2d) 58; Maxwell v. State, 236 Ark. 694, 370 S. W. (2d) 113; Morris v. Commonwealth, 306 Ky. 349, 208 S. W. (2d) 58; 113 U. of Pa. L. Rev. 272.

If we are to anticipate the determination the United States Supreme Court might make of the right of the father to consent to the search of a room occupied by a member of his family, we should be influenced by the decision of the United States Circuit Court of Appeals for this circuit, Roberts v. United States (8 Cir.) 332 F. (2d) 892, in which it was held that a wife could effectively consent to the search of premises owned jointly by herself and her husband, and that the product of the search was admissible in evidence in a criminal prosecution against the husband. While recognizing that courts have expressed divergent views on the question of whether the constitutional protection may be waived by the consent of one's spouse to enter and search premises jointly occupied and controlled by them, the court came to the conclusion that

the search was not unreasonable and under the circumstances in that case the evidence was admissible. The court said (332 F. [2d] 896):

"* * * We hold * * * that the right of the wife here to enter the home which was in her possession and control cannot be seriously questioned and that her invitation to and authorization to the officers to enter and search was an outgrowth thereof. It is not a question of agency, for a wife should not be held to have authority to waive her husband's constitutional rights. *This is a question of the wife's own rights to authorize entry into premises where she lives and of which she had control.*" (Italics supplied.)

Nor do we feel that the failure of the police officers to secure a search warrant affects the validity of the search. Had one been issued, it may be assumed that in executing it the police would have followed the accepted practice of serving a copy upon the person in possession, who was defendant's father.[4] It seems to us that under the circumstances the conduct of the police was not unreasonable. Rather than confront the father with a legal writ which would describe his home as a place where unlawful property was kept and advise him that the officers would have the right to force his doors to execute their business, commendably they informed the father of their problem, which was of greater concern to him than it was to society generally.

In the final analysis the test is reasonableness. We said in State ex rel. Beltowski v. Tahash, 266 Minn. 182, 123 N. W. (2d) 207, certiorari denied, 375 U. S. 947, 84 S. Ct. 358, 11 L. ed. (2d) 278, that the issue of reasonableness of a search and seizure is one of fact and depends upon the particular circumstances of each case. In Roberts v. United States (8 Cir.) 332 F. (2d) 892, 897, the court said (quoting

---

[4]Minn. St. 626.16 provides: "When the officer conducts the search he must give a copy of the warrant and, when property or things are taken, a receipt therefor (specifying it in detail) to the person in whose possession the premises or the property or things taken were found; or, in the absence of any person, he must leave such copy of the warrant and receipt in the place where the property or things were found. Such delivery of a copy of the warrant shall constitute service."

United States v. Rabinowitz, 339 U. S. 56, 63, 70 S. Ct. 430, 434, 94 L. ed. 653, 659):

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. Go-Bart Importing Co. v. United States, 282 U. S. 344, 357 [51 S. Ct. 153, 158, 75 L. Ed. 374]. Reasonableness is in the first instance for the District Court to determine." (Italics omitted.)

We conclude under the circumstances that it was reasonable for the police officers to seek the consent and cooperation of the father, who was in control of the property, and for him to consent to a search by them in the proper exercise of their duties.

Affirmed.

OTIS, JUSTICE (dissenting).

In my opinion defendant's father had no authority in fact or in law to consent to a search, without a warrant, of defendant's personal belongings located in the closet of his bedroom. Hence, the evidence thereby obtained should not have been received in evidence.

U. S. Const. Amend. IV, adopted as Minn. Const. art. 1, § 10, provides as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081, 84 A. L. R. (2d) 933, decided June 19, 1961, held that any evidence obtained by a search and seizure in violation of the Constitution is by the same authority inadmissible in a state court. The motion to suppress in the instant case was heard on May 18, 1962, nearly 11 months after the Mapp decision and it governs defendant's rights in these proceedings.

Although illegally obtained evidence was admissible in state courts until the Mapp decision, the United States Supreme Court has long held that under the Fourth Amendment the search of a private dwelling without a warrant is unreasonable and a violation of the Federal Constitution, whether or not there is probable cause for believing evidence to be concealed on the premises.[1]

In a series of recent cases the Supreme Court has substantially narrowed the area in which there may be intrusions into a dwelling without a warrant, starting with Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. ed. 436. There the court held that the police were not justified in failing to get a search warrant before entering a residence where opium was being smoked. The court's opinion stressed the factors which I believe are peculiarly applicable to the instant case (333 U. S. 13, 68 S. Ct. 369, 92 L. ed. 440):

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

---

[1]Agnello v. United States, 269 U. S. 20, 32, 46 S. Ct. 4, 6, 70 L. ed. 145, 149; McDonald v. United States, 335 U. S. 451, 453, 69 S. Ct. 191, 192, 93 L. ed. 153, 157.

"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. *No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate.* These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear." (Italics supplied.)

In holding unreasonable the search of a dwelling occupied by gamblers, where policy numbers were seized, the court reiterated the views expressed in the Johnson case and said that only in a grave emergency is there justification for failing to present the facts to a magistrate. McDonald v. United States, 335 U. S. 451, 454, 69 S. Ct. 191, 193, 93 L. ed. 153, 158.

One other noteworthy decision is Jeffers v. United States, 88 App. D. C. 58, 187 F. (2d) 498, affirmed sub nom. United States v. Jeffers, 342 U. S. 48, 72 S. Ct. 93, 96 L. ed. 59. There the defendant was charged with purchasing narcotics which were found in a hotel apartment occupied by defendant's aunts, who permitted him to use their premises although he had a room of his own elsewhere in the same building. The contraband evidence was confiscated by police admitted to the aunts' room by a hotel employee. The Supreme Court held that under the Fourth Amendment defendant had standing to object to the seizure.

The question then arises as to whether in the instant case the consent of defendant's father foreclosed defendant's constitutional rights.[2]

---

[2]Consent must be freely given. State ex rel. Branchaud v. Hedman, 269 Minn. 375, 380, 130 N. W. (2d) 628, 631; Channel v. United States (9 Cir.) 285 F. (2d) 217, 221; Higgins v. United States, 93 App. D. C. 340, 209 F. (2d) 819; Judd v. United States, 89 App. D. C. 64, 190 F. (2d)

What I regard as a decisive pronouncement on this question is Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. (2d) 697, which has rendered state and Federal decisions prior to March 28, 1960, of little assistance in resolving this issue.[3] Jones involved a search and a seizure of narcotics found in an awning outside the window of an apartment occupied by defendant as an invitee or guest. While defendant had a key to the premises, his home was elsewhere, and he paid no rent to the person who was actually the tenant. On defendant's motion to suppress the evidence, the prosecution asserted defendant had no standing to invoke the Fourth Amendment since the contraband was found in an area which was not defendant's home. In rejecting that contention, the United States Supreme Court stated (362 U. S. 266, 80 S. Ct. 733, 4 L. ed. [2d] 705):

"* * * We do not lightly depart from this course of decisions by the lower courts. We are persuaded, however, that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. Even in the area from which they derive, due consideration has led to the discarding of these distinctions in the homeland of the common law. * * * Distinctions such as those between 'lessee,' 'licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards.

"* * * No just interest of the Government in the effective and rigor-

---

649; United States v. Roberts (D. D. C.) 179 F. Supp. 478. On the subject of standing, see also Weeks, *Standing to Object in the Field of Search and Seizure,* 6 Ariz. L. Rev. 65.

[3]Woodard v. United States, 102 App. D. C. 393, 254 F. (2d) 312; Tomlinson v. State, 129 Fla. 658, 176 So. 543; Morris v. Commonwealth, 306 Ky. 349, 208 S. W. (2d) 58; Gray v. Commonwealth, 198 Ky. 610, 249 S. W. 769; People v. Galle, 153 Cal. App. (2d) 88, 314 P. (2d) 58; People v. Gorg, 45 Cal. (2d) 776, 291 P. (2d) 469.

ous enforcement of the criminal law will be hampered by recognizing that *anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.*" (Italics supplied.)

In concluding, the court emphasized that where the police do not have convincing evidence of the need for an immediate search it is essential that there be an application for a warrant so that evidence in the possession of the police may be weighed by an independent judicial officer "whose decision, not that of the police, may govern whether liberty or privacy is to be invaded." 362 U. S. 270, 80 S. Ct. 736, 4 L. ed. (2d) 708.

The Jones decision was followed by Chapman v. United States, 365 U. S. 610, 81 S. Ct. 776, 5 L. ed. (2d) 828, which applied the exclusionary rule where a landlord had consented to a raid of his tenant's premises by police officers. The government there contended that where the owner of the premises found they were being used for criminal purposes he had authority to enter as a matter of right and bring the officers with him. The court held that the purpose of entering was to search for distillery equipment and rejected the argument that the illegal conduct of the tenant forfeited his rights and revested possession in the landlord, pointing out that the landlord had no knowledge of the tenant's illegal use before the unlawful entry occurred.

By the same reasoning, I suggest that in the instant case the state cannot justify the owner's reentry of defendant's bedroom on the theory he only wished to divest himself of any property on the premises which did not lawfully belong there.

Finally, in Stoner v. California, 376 U. S. 483, 84 S. Ct. 889, 11 L. ed. (2d) 856, rehearing denied, 377 U. S. 940, 84 S. Ct. 1330, 12 L. ed. (2d) 303, consent given by a hotel clerk to search a guest's room was held not to foreclose the guest's right to invoke the Fourth Amendment. The language of the court in Stoner, I believe, should govern the disposition of the case before us (376 U. S. 489, 84 S. Ct. 893, 11 L. ed. [2d] 860):

"It is important to bear in mind that *it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the*

*hotel's. It was a right, therefore, which only the petitioner could waive* by word or deed, either directly or through an agent. It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room." (Italics supplied.)

In a number of cases which have considered the effect of a parent's consent to search the home of an accused without a warrant, the court has simply found that the premises did not constitute the residence of the child and hence he had no standing to invoke the Fourth Amendment.[4]

In other cases where a parent's or grandparent's consent was held effective, the opinions failed to show in what part of the premises the confiscated evidence was found, or indicated it was found in an area common to the use of all the household.[5] One court has held that where the mother has given consent, the son's right to object is waived unless asserted by timely motion to suppress the evidence.[6] Still another ruled that a daughter may not consent to a search of her mother's belongings on premises owned by the daughter, and that evidence thus obtained is inadmissible in Federal court. Holzhey v. United States (5 Cir.) 223 F. (2d) 823. In that case, as in this, the search was without a warrant and exploratory in nature.[7] In the instant case, the police officer made no claim he was searching for any particular evidence against defendant but stated only that he was looking for "any possible evidence that could connect him with [the robbery]."

---

[4]Rees v. Peyton (E. D. Va.) 225 F. Supp. 507; United States v. Maroney (W. D. Pa.) 220 F. Supp. 801.

[5]Morris v. Commonwealth, 306 Ky. 349, 208 S. W. (2d) 58; Combs v. Commonwealth (Ky.) 341 S. W. (2d) 774; Commonwealth v. McKenna, 202 Pa. Super. 360, 195 A. (2d) 817.

[6]Maxwell v. State, 236 Ark. 694, 704, 370 S. W. (2d) 113, 119.

[7]See, also, Reeves v. Warden (D. Md.) 226 F. Supp. 953, 960; State v. Evans, 45 Hawaii 622, 631, 372 P. (2d) 365, 372; Bellam v. State, 233 Md. 368, 370, 196 A. (2d) 891, 892; State v. Pina, 94 Ariz. 243, 383 P. (2d) 167.

We are not here dealing with an infant or adolescent child whose conduct a parent has the right and duty to supervise and control. On the contrary, defendant was an emancipated adult who had occupied these premises as his home for more than 15 years. I find nothing in such parent-child relationship from which implied consent to a search and seizure of the kind here involved may be inferred. With or without the payment of rent, I submit the Constitution requires that defendant's privacy be respected and that his clothing located in living quarters exclusively occupied by him be insulated from intrusion without a warrant as long as he remained in his father's home with his father's consent.

I respectfully submit that Roberts v. United States (8 Cir.) 332 F. (2d) 892,[8] on which the majority relies does not support its position. There the court held that the evidence in question—a bullet in the ceiling—was found in an area "jointly occupied and controlled" by the defendant and his wife, the latter having given consent to the search. The premises were in her possession. More significantly, however, the court held the search was reasonable because, in contrast to the instant case, *"the search did not extend to the personal effects of the appellant."* (332 F. [2d] 897.) (Italics supplied.) Here the defendant's bedroom and closet were *not* jointly occupied by defendant and his father, and the gun sought to be suppressed was found concealed in defendant's clothing. Under these circumstances, I submit the Roberts case compels reversal, and the motion to suppress as to the gun should have been granted.

KNUTSON, CHIEF JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.

NELSON, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.

---

[8]See, 49 Minn. L. Rev. 565.