## STATE v. WILLARD SCHOTL.

182 N. W. (2d) 878.

January 15, 1971—No. 41420.

C. Paul Jones, State Public Defender, and Rosalie E. Wahl, Assistant State Public Defender, for appellant.

Douglas M. Head, Attorney General, James M. Kelly, Assist-

ant Attorney General, and *Darrell C. Hill,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Rosengren, JJ.

MURPHY, JUSTICE.

Appeal from a judgment of conviction for the offense of burglary, Minn. St. 1967, § 609.58, subd. 2(2), and the denial of a motion for judgment of acquittal notwithstanding the verdict or a new trial. Defendant contends that the court erred in permitting introduction of evidence which was the product of an unlawful search and seizure; that the offense was not committed within a dwelling as comprehended by the statute; and that the evidence was not sufficient to support the verdict.

It appears from the record that defendant, Willard Schotl, age 22, accompanied by one Gary Ramler, age 16, on the night of May 4, 1967, burglarized Bernard Mueller's Pearl Lake Store in rural Stearns County, Minnesota. The front door was pried open with a crowbar which was in defendant's possession. The Mueller building housed a mercantile establishment, including a grocery store and bar, as well as the owner's living quarters. The youths ransacked the premises, including the basement, and removed firearms, ammunition, two electric drills, watches and watchbands, cigars, cigarettes, beer, two Jade transistor radios, and an old army coat. The firearms were described as a 760 Gamemaster rifle and a Steyr .25-caliber pistol. Before leaving the premises, the intruders entered the living quarters where defendant stood next to a sleeping child on the couch. They returned to their homes in St. Cloud where they divided the spoils, including an undesignated amount of cash.

After talking with his clergyman, Ramler called his probation officer and made a full disclosure of his conduct on the night of May 3-4. He surrendered his share of the stolen property, as well as the crowbar, which he had in his possession. Following a report to the county sheriff, a warrant was issued for defendant's

arrest. However, defendant was absent from his home at the time the law-enforcement officers attempted to serve the warrant. The officers explained to defendant's mother the purpose of their visit, after which she admitted them to the home. Following a discussion, the mother led the officers to defendant's room, saying "Yes, * * * let's go up and look and see if there is anything up there." Upon reaching defendant's room, she said, "This is Willard's room, go ahead and look." She made no objection to the search and gave the distinct impression that she wanted the officers to look. Because of her attitude and apparent consent, the officers did not feel that it was necessary to secure a search warrant. The mother was present in the room at all times the officers were there. They found the Steyr pistol, radios, and cigars, which were identified as having been taken from the Mueller building. The 760 Gamemaster rifle was later located. Defendant's brother had given the rifle to a friend from whose possession it was retrieved.

■ The first issue raised by defendant—that the acquiescence of his mother did not excuse the warrantless search of defendant's room and that the evidence discovered and taken violated his Fourth and Fourteenth Amendment rights—is controlled by our decision in State v. Kinderman, 271 Minn. 405, 136 N. W. (2d) 577, certiorari denied, 384 U. S. 909, 86 S. Ct. 1349, 16 L. ed. (2d) 361, which follows the majority rule that a parent in control of premises in which the child resides may consent to a search thereof even though it may produce incriminating evidence.[1] We noted in Kinderman that, in the final analysis, the

---

[1] Fisher, Search and Seizure, Traffic Institute, Northwestern University, p. 123; State v. Dhaemers, 276 Minn. 332, 150 N. W. (2d) 61; United States ex rel. McKenna v. Myers (E. D. Pa.) 232 F. Supp. 65, affirmed (3 Cir.) 342 F. (2d) 998, certiorari denied, 382 U. S. 857, 86 S. Ct. 111, 15 L. ed. (2d) 95 (consent by mother); Maxwell v. Stephens (8 Cir.) 348 F. (2d) 325, certiorari denied, 382 U. S. 944, 86 S. Ct. 387, 15 L. ed. (2d) 353 (consent by mother); Commonwealth v. Hardy, 423 Pa. 208, 223 A. (2d) 719 (consent by father); People v. Clark, 252 Cal. App. (2d) 479, 60 Cal. Rptr. 569 (consent by mother); State v. Williamson, 78 N. Mex. 751,

test of the constitutionality of a warrantless search is reasonableness and that the issue of reasonableness is one of fact and depends upon the particular circumstances in each case. Under the circumstances in that case we held that a parent could consent to the search of his 22-year-old son's room and that such consent would validate a warrantless search. We there said (271 Minn. 409, 136 N. W. [2d] 580):

"* * * We cannot agree that a child, whether he be dependent or emancipated * * *, has the same constitutional rights of privacy in the family home which he might have in a rented hotel room. In considering the reasonableness of a search of a home when the search is consented to by the father, the protection afforded to the child must be viewed in light of the father's right to waive it."

The record here establishes the mother's possessory interest in the house. At the time of the search and seizure, her control over the premises was apparently absolute. In an attempt to bring the issue within Stoner v. California, 376 U. S. 483, 84 S. Ct. 889, 11 L. ed. (2d) 856, defendant contends that he was actually a tenant in the home. The record discloses that the Schotl family lived on the same premises for 15 years and that defendant always resided there when he was at home. After obtaining some money for a settlement involving his father's death, in April 1967 defendant had made a $100 payment to his mother for the purpose of "staying there." This was the only payment made by defendant, and it did not cover any particular period

438 P. (2d) 161 (consent by mother); Tolbert v. State, 224 Ga. 291, 161 S. E. (2d) 279 (consent by father to search son's car parked upon father's premises); Rivers v. State (Fla. S. Ct.) 226 S. (2d) 337 (consent by grandfather); People v. Thomas, 120 Ill. App. (2d) 219, 256 N. E. (2d) 870 (consent by mother); McGee v. State (Tenn. Cr. App.) 451 S. W. (2d) 709, certiorari denied by Tennessee Supreme Court March 2, 1970 (consent by persons with whom defendant lived as a nonrelated family member). A contrary view is expressed in People v. Flowers, 23 Mich. App. 523, 179 N. W. (2d) 56.

of time. Moreover, it does not appear that defendant had an exclusive right to possession of the room or that he used it regularly. There was testimony that the use of the room was shared with defendant's brother and sisters during his unexplained absences. Rather than establishing a landlord and tenant relationship, the record fairly establishes that other members of the family had equal access to, and use of, the room. Moreover, there was no evidence that any coercion was used in obtaining the mother's acquiescence in the search of the room.

■ Nor do we think there is merit to defendant's contention that he was improperly charged with burglary of a dwelling. The statute in question, Minn. St. 1967, § 609.58, subd. 2, provides in part:

"Whoever enters a building without the consent of the person in lawful possession, with intent to commit a crime therein, commits burglary and may be sentenced as follows:

\* \* \* \* \*

"(2) To imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both, if the building entered is a dwelling and another person not an accomplice is present therein."

We gather that the thrust of this argument is that since the thefts were limited to the mercantile area of the building, it may not be said that the burglary involved a dwelling as described in the statute cited. As we have already pointed out, the place burglarized by defendant was a structure which included the residence or living quarters of the owner. The fact that these quarters were adjacent to the store premises does not deprive the building of its character as a dwelling.[2] While we have not

---

[2] After the 1963 revision of the Minnesota Criminal Code, the burglary statute does not have a separate definition for "dwelling house." However, Minn. St. 1961, § 621.01, subd. 3, defined "dwelling house," and "dwelling" as used in Minn. St. 1967, § 609.58, subd. 1, was intended to have the same meaning. See, Advisory Committee Comment, 40

been cited to a Minnesota case, the weight of authority would support this view. 12 C. J. S., Burglary, § 19; 13 Am. Jur. (2d) Burglary, § 5; Ex parte Vincent, 26 Ala. 145, 62 Am. D. 714; Samanni v. Commonwealth, 16 Grat. (Va.) 543; People v. Griffin, 77 Mich. 585, 43 N. W. 1061; State v. Hutchinson, 111 Mo. 257, 20 S. W. 34; State v. Gates, 197 Iowa 777, 197 N. W. 908; People v. Oliff, 361 Ill. 237, 197 N. E. 777; State v. Ferguson, 233 Iowa 354, 6 N. W. (2d) 856; Stanton v. State, 159 Tex. Cr. 275, 262 S. W. (2d) 497.

It is undisputed that, once access was gained to the mercantile area, entrance to the dwelling area could be made by merely opening a hall door. Under the circumstances, as established by the record, it is our view that the breaking and entering of any part of the structure was a breaking and entering of a dwelling which was habitually used and occupied by the owner's family.

The contention of defendant that the verdict is not supported by the evidence is wholly without merit and does not require discussion.

Affirmed.

---

M. S. A. p. 535. Minn. St. 1961, § 621.01, subd. 3, provided: "The words 'dwelling house' mean every building or structure which shall have been usually occupied by persons lodging therein at night * * *." As related to the crime of burglary, a building will be considered a "dwelling" or "dwelling house" if it is habitually or regularly used as a place to sleep. Clark and Marshall, Law of Crimes (6 ed.) § 13.01; Poff v. State, 4 Md. App. 186, 241 A. (2d) 898.