**STATE of Minnesota, Respondent,**

v.

**Joel Peter YAEGER, Appellant.**

**No. 48457.**

Supreme Court of Minnesota.

March 30, 1979.

---

Fletcher Law Offices and Michael K. O'Tool, St. Cloud, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., St. Paul, and Richard T. Jessen, County Atty., Foley, for respondent.

KELLY, Justice.

Defendant was found guilty by a district court jury of charges of burglary, Minn.St. 609.58, and aggravated criminal damage to property, Minn.St. 609.595, subd. 1(3), and was sentenced by the trial court to two concurrent 5-year prison terms with execution stayed and defendant placed on probation on a number of conditions, including that he make restitution. On this appeal from judgment of conviction defendant challenges the legality of the police conduct which led to the seizure of incriminating items from his residence and from his truck, and he also contends that the trial court erroneously limited his counsel's cross-examination of an expert witness testifying for the state. We affirm.

At midnight on January 21, 1977, a Sauk Rapids couple returned to their house and discovered that someone had broken into their house and maliciously damaged a large amount of their property, including valuable stereo components and an MG automobile parked in the garage for the winter. The police inferred from the damage and the fact that no property was taken that the intruder had strong personal animosity toward one or both of the victims. They knew that defendant fit this description and, significantly, one of the officers, who incidentally was defendant's brother-in-law, had observed defendant's truck driving toward the house around 10:00 p. m. and leaving the area around 11:00 p. m.

Armed with this information and having called defendant's parents and learned that defendant was home, the officers drove to their home, which was in St. Cloud, just across the river from Sauk Rapids. After being voluntarily admitted by the father, who had been told on the telephone that defendant might be in trouble, one of the officers spotted in open view a pair of boots which still had unmelted snow on them. Upon learning from the father that the boots were defendant's, this officer picked them up and observed fresh cuts on them and pieces of glass imbedded in them. After learning from the father that defendant was asleep and that the father had not been able to awaken him, the officers sought and obtained the father's permission to walk on his land and look at defendant's truck, which was parked there.

Walking up to the truck but not physically intruding into it, the officers shined a flashlight into the open exterior pickup box and also into the cab. They observed in open view in the box a hammer which had fresh cuts on the handle and clearly visible green paint on the head. Having reason to believe that a hammer had been used to cause some of the damage, particularly to the green MG owned by the victims, the officers seized the hammer. They also opened the unlocked door of the pickup cab and seized some gloves which they also had observed in open view from the outside.

A short time later, after taking these items to the Sauk Rapids police station, the officers returned and were readmitted to the house by defendant's father, who awakened the defendant. The officers then gave defendant a *Miranda* warning and talked with him, defendant denying that he had been in Sauk Rapids that night (a denial he retracted the following day). When they were leaving the house, the officers seized defendant's boots, which were still in open view. Expert testimony later connected these boots, as well as the hammer and gloves, to the crimes.

These facts obviously raise the issue of the scope of the so-called "plain-view doctrine," as explicated by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As Judge Moylan points out in his article on the doctrine. "The hardest conceptual problem attending the plain view doctrine is to grasp that it is not a universal statement of the right of a policeman to seize after seeing something in open view; it is rather a limited statement of that right in one of several instances—following a valid intrusion." Moylan, *The Plain View Doctrine*, 26 Mercer L.Rev. 1047, 1096. Moylan isolates two types of observations of items in open view which are not covered by the plain-view doctrine. The first is the nonintrusive situation, where the police see seizable evidence in open view in a constitutionally nonprotected area, e. g., an open field. In this situation if the police seize the evidence they do it not by virtue of the plain view doctrine, but because "there is no constitutional provision to gainsay the seizure." Id., p. 1097. The second situation is the preintrusive situation, where police stand on the outside of a constitutionally protected area and look in and see seizable items in open view. In this situation the police may seize the evidence

without a warrant only if there is "an additional legal predicate for the intrusion necessary to effect a seizure." Id., p. 1100.

■ In this case when the officers looked into the open exterior pickup box and into the cab they were standing in a place where they clearly had a right to be, since the owner of the land, defendant's father, had given them consent to go there. The only question is whether the officers were justified in reaching into the open exterior pickup box to seize the hammer and into the cab to seize the gloves. The seizure of the hammer arguably is an example of a nonintrusive seizure, at least if one accepts the theory that defendant had no reasonable expectation of privacy in the exterior parts of his pickup truck. See, *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion). However, we need not decide this. Even assuming that the open exterior pickup box was then a constitutionally protected area in which defendant had a reasonable expectation of privacy, as the cab of the truck clearly was, the officers still had the additional justification for crossing the threshold and seizing the items, the justification being provided by the exigency created by the readily movable nature of the vehicle. In other words, the intrusions into the open box and the cab were justified by the so-called automobile exception (also called the *Carroll* doctrine). See, *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925); Moylan, *The Plain View Doctrine*, 26 Mercer L.Rev. 1047, 1099.[1]

■ As for the boots, their seizure is justified by the plain-view doctrine, since the police were validly inside the constitutionally protected area, the house, when they observed the boots in open view in that area. Whether the officers acted properly in temporarily seizing and looking at the bottoms of the boots when they first en-

---

1. An alternative way of justifying the intrusion into the protected areas of the truck in order to seize the evidence observed in open view from the outside would be to rely on the third-party consent doctrine and say that the officers had consent for their intrusion. Cases on this include: *State v. Martin*, 261 N.W.2d 341 (Minn. 1977); *State v. Schotl*, 289 Minn. 175, 182

N.W.2d 878 (1971); *State v. Kinderman*, 271 Minn. 405, 136 N.W.2d 577 (1965), certiorari denied, 384 U.S. 909, 86 S.Ct. 1349, 16 L.Ed.2d 361 (1966). Rather than decide whether the third-party consent doctrine should be stretched to cover this sort of situation, we have relied on the *Carroll* doctrine, which clearly applies.

tered the house and learned that the boots were defendant's depends, according to the *Coolidge* case, upon whether it was "immediately apparent" to the officers that the boots were seizable evidence. Whether this was apparent at the time depends in this case on whether the officers had probable cause to believe that defendant committed the crimes they were investigating. *State v. Streitz*, 258 N.W.2d 768 (Minn.1977). We need not decide ·if the officers then had probable cause because by the time the officers permanently seized the boots they clearly did. We believe it was inevitable under all the circumstances that the officers would have permanently seized the boots when they did even if they had not temporarily seized them earlier. *Brewer v. Williams*, 430 U.S. 387, 406, n. 12, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424, 441 (1977).

There is no merit to defendant's contention that the trial court abused its discretion and committed prejudicial error in sustaining an objection made by the prosecutor during defense counsel's attempt to impeach the expert witness whose testimony connected defendant's boots to the crime.

Affirmed.