**STATE of Minnesota, Respondent,**

v.

**Daniel Mark HENDRICKSON, Appellant.**

No. C1–94–860.

Court of Appeals of Minnesota.

Feb. 28, 1995.

Review Denied April 27, 1995.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James Backstrom, Dakota County Atty., Patrick T. Skelly, Asst. County Atty., Hastings, for respondent.

John M. Stuart, State Public Defender, Charlann Winking, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant, convicted of first degree burglary, contends that occupancy of a church attached to a burglarized rectory does not constitute occupancy of a dwelling. He also states a general challenge to the sufficiency of evidence for his conviction, he disputes the admission of *Spreigl* evidence, and he con-

tests the trial court's upward departure from sentencing guidelines. We affirm.

## FACTS

Appellant Daniel Hendrickson was charged with first degree burglary (Minn.Stat. § 609.582, subd. 1(a) (1992)) for entering the rectory at Holy Trinity Church in South St. Paul and taking Father John LeVoir's wallet. Hendrickson was also charged with financial transaction card fraud for using LeVoir's credit card, and with tampering with a witness for threatening two witnesses.

Father LeVoir testified that he lived in the Holy Trinity rectory, which was connected by a hallway to the main church. He had celebrated 7:30 a.m. mass on Sunday, March 7, 1993, then remained in the church. When he returned to the rectory, he noticed his wallet was missing and saw other signs of an intrusion. LeVoir testified that he had $60 and his credit cards in the wallet. He said that the door from the church hallway to the rectory was open.

Appellant was involved in an automobile accident at about 12:45 p.m. that Sunday in West St. Paul, not far from the South St. Paul location of Holy Trinity Church. When police responded to the accident scene, they found Father LeVoir's driver's license and several of his credit cards in the car Hendrickson was driving. LeVoir's credit card had been used shortly before the accident at a nearby gas station.

In the course of several statements, appellant ultimately admitted to police that he had used LeVoir's credit card. But he denied committing the burglary at the rectory. He claimed that his girlfriend had found the credit cards in the parking lot of a convenience store.

The trial court allowed the state to present as *Spreigl* evidence a number of wallet and purse thefts. The state argued that these incidents displayed a similar modus operandi, that they occurred along Hendrickson's "corridor of crime" (Interstate Highway 494), and that they showed Hendrickson committed the actual building entries and the ensuing thefts himself, and did not rely on an accomplice.

Terri Hendrickson, appellant's sister, admitted that she told police her brother told her he had gone to Holy Trinity Church. She denied that appellant told her what he had done at the church. Todd Danielson, Terri Hendrickson's fiance, told police three times that appellant told him he had gone into the church and stolen a wallet. Both Terri Hendrickson and Todd Danielson testified that appellant had made threats against them.

The jury found appellant guilty of first degree burglary, financial transaction card fraud, and tampering with witnesses.

At sentencing the state moved for a departure under the career offender statute, up to the statutory maximum of 20 years for the first degree burglary conviction. The state presented a number of uncharged or unadjudicated incidents to establish a "pattern of conduct" under the career offender statute. The trial court found that a pattern of criminal conduct had been established and imposed a 20-year sentence.

## ANALYSIS

*1. Presence of another person in the "dwelling"*

Hendrickson contends that he cannot be convicted of first degree burglary because there was no proof that anyone was present in the rectory during the burglary. The state's theory was that it had to prove only that someone was present in the attached church when the burglary occurred. The trial court left this issue to the jury as a question of fact.

■ Appellant's burglary conviction depends on proof that he entered a dwelling "and another person not an accomplice [was] present in it." Minn.Stat. § 609.582, subd. 1(a) (1992). The statute defines a "dwelling" as follows:

"Dwelling" means a building used as a permanent or temporary residence.

Minn.Stat. § 609.581, subd. 3 (1992). The statutory definition does not explicitly include appurtenant structures, but the statutory definition of "building," a term used in the definition of "dwelling," includes "any

appurtenant or connected structure." Minn. Stat. § 609.581, subd. 2. Thus, the definition of "dwelling" includes appurtenant structures.

This reading of the statute is supported by the supreme court's holding on a family residence attached to a burglarized store. *State v. Schotl,* 289 Minn. 175, 182 N.W.2d 878 (1971). In *Schotl,* the supreme court held that the location of the family residence "adjacent to the store premises does not deprive the building of its character as a dwelling." *Id.* at 179, 182 N.W.2d at 880. The court held that "the breaking and entering of any part of the structure was a breaking and entering of a dwelling." *Id.* at 180, 182 N.W.2d at 881.

*Schotl* involved the definition of a "dwelling" for purposes of the requirement of breaking and entering. This case involves the definition of a "dwelling" for purposes of the requirement that another person not an accomplice be present inside. But to consistently apply the statute, a "dwelling" should be defined the same for purposes of both elements of the offense.

The testimony at trial established that Father LeVoir, as well as others, were present in the church adjacent to the rectory. In particular, a number of people were going in and out of the sacristy, the area of the church closest to the rectory, at about the time the theft occurred.

■ Penal statutes must be strictly construed. *State v. Brown,* 486 N.W.2d 816, 817 (Minn.App.1992). This court has recently construed the first degree burglary statute narrowly, to require that another person must be present in the dwelling at the time of the burglar's entry, not at some later time while the burglary is in progress. *State v. Nelson,* 523 N.W.2d 667, 670 (Minn.App. 1994). But the holding in *Nelson* is not unusually narrow; the crime of burglary is defined in terms of entry, and is complete upon entry. *See State v. Nelson,* 363 N.W.2d 81, 83 (Minn.App.1985) (defendant who stepped through window and put one or two feet on desk inside was properly convicted of burglary).

■ Although entry of a dwelling is an element of the offense, there is no authority for dividing the dwelling, or separating it from its adjacent structures, for purposes of the burglary statute. *See generally State v. Zacher,* 504 N.W.2d 468, 473 (Minn.1993) (rule of strict construction does not require assigning the narrowest possible interpretation to the statute). The trial court reasonably adjudicated that occupancy of appurtenant parts of the rectory was sufficient to show the dwelling was occupied.

## 2. Other issues

### a. Sufficiency of burglary evidence

■ When assessing its sufficiency, the reviewing court must view the evidence in the light most favorable to the conviction, asking whether the record permitted the jurors to reach the verdict they did. *See State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). We must assume the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

■ In order to prove a defendant committed burglary, the state need not present direct evidence placing the defendant in the dwelling. *See State v. Hines,* 354 N.W.2d 91, 93 (Minn.App.1984), *pet. for rev. denied* (Minn. Nov. 7, 1984). And circumstantial evidence may be sufficient to establish that a defendant broke into a building. *State v. Crosby,* 277 Minn. 22, 25, 151 N.W.2d 297, 299 (1967) (circumstantial evidence, including footprints leading from the building, was sufficient to identify defendant as one of the burglars).

■ Appellant's possession of Father LeVoir's credit cards so soon after the burglary, and his use of one of them, are strong evidence linking him to the burglary. The unauthorized use of the stolen credit card, appellant's attempts to hide the stolen documents after the accident, and his visits to the impound lot afterwards, tend strongly to disprove his testimony that he found the credit cards. We must assume the jury believed that appellant admitted to his sister and her fiance that he had burglarized the Holy Trinity rectory. This evidence was sufficient to

prove not only that appellant possessed stolen property, but also that he committed first degree burglary.

### b. Spreigl evidence

The trial court allowed the state to present *Spreigl* evidence of various offenses committed within about four months of the charged offense. Appellant argues that this was an abuse of discretion, pointing out that none of the other offenses involved a dwelling, and that they occurred in different locations; and arguing that they bore no unique similarity to the charged offense. Appellant also argues that some of the *Spreigl* offenses were not proven by clear and convincing evidence.

Admission of *Spreigl* evidence rests within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *State v. DeWald*, 464 N.W.2d 500, 503 (Minn.1991). In order to be admissible, *Spreigl* evidence must be established by clear and convincing evidence, must be relevant and material to the state's case, and must have probative value outweighing its potential for unfair prejudice. *Id.*

In this case, there was evidence of nine *Spreigl* offenses, with eleven victims. Each of the offenses involved a wallet or purse theft within a building, and each was in an area open to the public or from a private space adjacent to it. Absolute similarity between the charged offense and the *Spreigl* incident is not required. *State v. Landin*, 472 N.W.2d 854, 860 (Minn.1991). There are sufficient similarities to the charged offense in this case. *Cf. State v. Buhl*, 520 N.W.2d 177, 181–82 (Minn.App.1994), *pet. for rev. denied* (Minn. Oct. 27, 1994) (dissimilarities between *Spreigl* offense and charged offense outweighed similarities, making *Spreigl* evidence inadmissible).

We agree with appellant's argument that the Crystal Free Church offense and the Apple Valley Clinic offense were not established by clear and convincing evidence. There was only a tentative identification by the victim in the Crystal Free Church offense, and the state conceded it could not prove, except with reference to the other *Spreigl* offenses, that appellant committed

the Apple Valley offense. But the state argued and the trial court agreed that *Spreigl* offenses could be used to prove other *Spreigls*.

We believe that the use of *Spreigl* offenses to prove other *Spreigl* offenses is misguided and fraught with potential prejudice. First, it would be uncommon that another *Spreigl* offense would supply the clear and convincing evidence required, or significantly buttress the state's other evidence that the defendant committed the other *Spreigl* offense. Second, it is the court, not the jury, that determines whether clear and convincing evidence supports the *Spreigl* evidence the state seeks to introduce. *See DeWald*, 464 N.W.2d at 503 (trial court must find clear and convincing evidence of defendant's participation before determining admissibility of *Spreigl*). By admitting *Spreigl*-to-prove-*Spreigl* evidence, the trial court places before the jury potentially prejudicial evidence lacking sufficient relevance for the legitimate *Spreigl* purposes of proving identity, common scheme or plan, etc.

We also conclude that the admission of the Crystal Free Church and Apple Valley offenses was harmless error. The erroneous admission of evidence of other bad acts may be harmless if the other evidence of guilt is sufficiently strong. *State v. Dolbeare*, 511 N.W.2d 443, 446 (Minn.1994). The evidence tying appellant to the rectory burglary is particularly strong, despite the lack of any direct evidence placing him in the rectory. The Crystal Free Church and Apple Valley offense were cumulative to the other properly admitted *Spreigl* evidence.

### c. "Career offender" sentencing departure

Appellant challenges the sentencing departure up to the 20–year statutory maximum, based on the career offender statute. He contends that the trial court improperly used unadjudicated and uncharged conduct in sentencing him under the statute and that a "pattern of criminal conduct" was not established, at least by his adjudicated offenses. *See* Minn.Stat. § 609.152, subd. 3 (1992). But the court at sentencing referred both to the evidence presented at sentencing

and the evidence presented at trial. Because appellant's prior convictions were presented as evidence at trial, we conclude the trial court did not rely on unadjudicated offenses. And because appellant was convicted of felony theft and credit card fraud in 1988, and of felony theft in 1991, his adjudicated conduct met the statutory requirement of a "pattern of criminal conduct."

## DECISION

The evidence was sufficient to support the conviction for first degree burglary. The trial court did not prejudicially err in admitting *Spreigl* evidence. The court did not abuse its discretion in departing upwards to the statutory maximum.

**Affirmed.**